UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DERICK L. CAMPBELL | ) | CASE NO. 1:09 CV 2968 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | JUDGE CHRISTOPHER A. BOYKO |
| NORFOLK SOUTHERN | ) | |
| CORPORATION | ) | <u>OPINION AND ORDER</u> |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## I. ISSUE

This matter comes before the Court upon Defendant's Motion for Summary Judgment seeking to dismiss all nine of Plaintiff's causes of action. The Magistrate Judge recommends Summary Judgment be granted for all nine counts and the case be dismissed with prejudice. For the following reasons, the Court Accepts and Adopts the Magistrate Judge's Recommendation and grants Defendant's Motion for Summary Judgment on all of Plaintiff's claims.

## II. PROCEDURAL HISTORY

Plaintiff Derick L. Campbell ("Plaintiff") filed a Complaint against Defendant Norfolk Southern Railway Co. ("Defendant") raising nine counts as follows: (1) race discrimination due to a hostile work environment based upon 42 U.S.C. § 2000e, *et seq.*, Title VII of the Civil Rights Act of 1964, as amended in 1991; (2) race discrimination due to a hostile work environment based upon 42 U.S.C. § 1981; (3) race discrimination due to a hostile work environment based upon Ohio Revised Code § 4112.02(A); (4) failure to promote based upon

race discrimination pursuant to Title VII; (5) failure to promote based upon race discrimination pursuant to 42 U.S.C. § 1981; (6) failure to promote based upon race discrimination pursuant to Ohio law; (7) retaliation due to discriminatory harassment under Title VII; (8) retaliation due to discriminatory harassment under 42 U.S.C. § 1981; and, (9) retaliation due to discriminatory harassment under Ohio law.  (Doc. No. 1.)  Defendant filed an Answer to the Complaint denying all allegations.  (Doc. No. 3.)

Defendant then filed a Motion for Summary Judgment.  (Doc. No. 36.)  Plaintiff responded with a responsive brief, to which Defendant replied.  (Doc. Nos. 41, 49.)

### III. Facts

Plaintiff, an African-American male, began working for Defendant in 1992 as a conductor.  On October 1, 2006, Plaintiff was promoted to "Road Foreman of Engines," a management position in the Dearborn Division.  This position is responsible for supervising and training locomotive engineers in an assigned territory.  Road Foremen have designated off days, but otherwise are on call twenty-four hours a day, seven days a week, to address any issues that may arise.

From October 2006, through October 2008, Plaintiff's supervisor was Division Road Foreman H. Lantz Blanton, a white male.  Plaintiff alleges several racially motivated interactions with Blanton as follows:

(1) Plaintiff alleges that in 2007, Blanton ordered Plaintiff to work the weekend before his scheduled vacation week.  Plaintiff contends that he had to work because Anthony Penix, another Road Foreman and friend of Blanton, was on vacation.  Blanton's order subsequently delayed Plaintiff's vacation.

(2) Plaintiff alleges that in 2008, Blanton mandated that he handle a disciplinary situation involving a locomotive engineer trainee on the Saturday before his scheduled vacation. As a result his vacation was delayed. Plaintiff alleges that another Road Foreman could have handled the situation.

(3) Plaintiff also alleges that in 2008, Blanton gave him a less-than-favorable performance evaluation. The initial performance review indicated that Plaintiff needed to improve his relationship with a particular employee. At Plaintiff's request, he and Blanton discussed the review and Blanton agreed to remove the comment from the evaluation. Plaintiff agrees that this made it a "favorable" evaluation.

(4) Plaintiff alleges that Blanton made a racist remark to another employee about interracial marriage. Specifically, the comment was "[you] must think it's okay for black people and white people to marry, too." Plaintiff heard about the comment through another employee and alleges that it was common knowledge that he had a white girlfriend. Blanton denied that he knew Plaintiff was dating a Caucasian.

(5) In August 2008, Plaintiff developed diverticulitis which caused him to experience abdominal pain. On August 18, 2008, Plaintiff received a call from Blanton at 11:00 a.m., requesting him to drive a locomotive simulator more than 200 miles from Toledo, Ohio, to Western Pennsylvania. Plaintiff told Blanton he was experiencing severe pain and needed to see a doctor. Plaintiff then asked if another employee could fill in for him at which point Blanton said no.

That morning Plaintiff met Blanton in the parking lot where the simulator was located. Another employee, Jeff Allen, was also present. Plaintiff again told Blanton that he was sick and

asked him to send Allen instead.  Blanton again denied the request.  When the conversation took place Blanton was sitting in his car.  At some point he reached into the door compartment, picked up a Beretta pistol, and pointed it in Plaintiff's direction saying, "Why don't you just turn around and let me shoot you in the back of the head and put you out of your misery?"  Blanton testified that he intended the comment as a joke.  Plaintiff testified that he did not know why Blanton made the comment, but he believed it was because Blanton knew he was sick and did not want to drive the simulator to Pennsylvania.

(6) Upon returning from Pennsylvania, Plaintiff experienced severe abdominal pain.  On August 19, 2008, he went to see his doctor, who ordered him not to return to work until August 25, 2008.  Despite Plaintiff informing Blanton of the doctor's order, Blanton attempted to call Plaintiff multiple times on August 22, 2008, but Plaintiff did not answer his phone.  The next day Plaintiff returned Blanton's calls and found that Blanton was trying to reach him to address a violation committed by one of the engineers.  Blanton told Plaintiff that being sick was not a good reason to be unresponsive to his calls.

From August 23, 2008, until August 27, 2008, Plaintiff was hospitalized because his condition had worsened.  On September 25, 2008, Plaintiff called Defendant's Equal Employment Opportunity ("EEO") hotline, leaving an unspecified message regarding the alleged racial harassment by Blanton.

On September 28, 2008, Plaintiff had a serious medical condition that required emergency surgery.  The next day, Plaintiff contacted Superintendent Mike Irvin, advising him of his current medical condition as well as the issues he had with Blanton, including the gun incident.  Irvin immediately contacted Blanton and Allen, requesting each to write a statement as

4

to the August 18, 2008 incident.

    Blanton's Statement to Irvin was as follows:

Mr. Irvin:
On August 18th 2008 Jeff Allen, Derick Campbell and I were in the parking lot just east of the Lower Level.  I was seated in my Jeep with the door open listening to Derick give me a list of all the physical ailments he had been experiencing the past couple of days.  When he finished I lifted the butt of a small handgun out of the side console of my Jeep and told him he might be better off if I just shot him.  All three of us had a good laugh and continued our conversation for a few minutes before I departed.
Lantz Blanton

    Allen's statement regarding the gun incident was as follows:

Mr. Irvin:
On 18 August 2008, I RFE J.L. Allen and DRFE H.L. Blanton & RFE D.L. Campbell, were talking and joking at the lower level CD287 parking area around the RFE & Trainmaster office.  RFE D.L. Campbell stated to the DRFE that he was not feeling well and that he was going to see his physician.  DRFE H.L. Blanton was sitting in his vehicle and reach[ed] down and displayed a small hand gun and said to RFE D.L. Campbell turn around and let me shot [sic] in the back of your head and put you out of your misery." End of Statement. J.L. Allen RFE Toledo West

    At his deposition, Allen clarified that the gun was not pointed at the Plaintiff, but displayed toward him.  Allen also testified that he did not believe the gun incident was a race issue, but later implied that such an incident by a white man raised in the South would be intimidating to a black employee.

    Upon receiving notification of the incident, Irvin immediately contacted Derek Bond, an employee in Defendant's EEO department, to investigate the incident, and recommend an appropriate disciplinary response concerning Blanton.  Irvin also immediately contacted Blanton to inform him that his conduct was unacceptable and would not be tolerated.  Following this conversation Blanton contacted Plaintiff to apologize.

5

The EEO office then contacted Plaintiff who also complained about the two scheduling incidents and the phone calls he received from Blanton while out on medical leave.  Plaintiff also asserted that he was not satisfied with Blanton's apology and felt harassed.  Plaintiff did not mention that he perceived the gun incident to be threatening.

The EEO office completed its investigation and prepared a summary of its findings, which was reviewed by management.  The Assistant Vice President of Diversity and EEO director, R. David Cobbs, Jr., recommended that Blanton be terminated from his supervisory position.  After the gun incident, Plaintiff had no further contact with Blanton, except for his apology.

Plaintiff claims that he became known as "the most hated person on the Dearborn line" for causing Blanton to lose his management position.  Plaintiff also alleges that he was retaliated against when new Division Road Foreman Aaron Sherman adopted a policy which Plaintiff indicates is known as the "Derick Campbell Rule."  Plaintiff's job involves certain operational monitoring observations, including whether locomotive engineers have the ability to adequately control the speed of a locomotive.  Road Foremen are required to ride with an engineer for at least 50 miles at least once per year.  About one year after Sherman became the Division Road Foreman in the Dearborn Division, he decided to increase the observational train rides to 75 miles as he determined there was insufficient speed changes in the 50 mile train ride to adequately observe the engineer's ability to control the train.  Plaintiff testified that Sherman sent him, and no other Road Foreman, an e-mail instructing him to go more than the minimum 50 mile requirement.

Plaintiff also asserts that the Assistant Division Manager, Mike Wilson, who runs daily

6

operations, harassed him by giving him contradictory information regarding documentation of a possible crew injury for which Plaintiff could have been responsible.

Lastly, Plaintiff alleges that race was a factor for not being selected to any of the positions he applied for; and, that Defendant hired less qualified white employees instead. Between October 2006, and December 2009, Plaintiff unsuccessfully applied for a variety of positions that were at an equal or higher salary level than his Road Foreman position.

Decisions to fill open positions are made by, or in close consultation with, Defendant's Human Research ("HR") Generalists located in Norfolk, Virginia. HR Generalists evaluate the applicants, identify the most qualified candidates, and then send a pool of qualified candidates to the hiring manager responsible for conducting the interviews.

Lewis Maye, an HR Generalist for the Defendant, was responsible for evaluating the applicants and developing a candidate pool for the majority of positions Plaintiff applied for. Maye testified that he did not know Plaintiff's race when he was looking for competitive candidates. Plaintiff interviewed for the Position of Piermaster, but was not selected. After the interview, he was found not to be the most qualified candidate. As for the other positions Plaintiff sought, the HR Generalists determined that Plaintiff was not selected as he lacked the necessary experience and qualifications.

## IV. STANDARD OF REVIEW

**A. Civil Rule 72(b) Standard**

Pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(c), the District Court shall review *de novo* any finding or recommendation of the Magistrate Judge's Report and Recommendation that has been specifically objected to. Failure to make a timely objection to

any aspect of the Report and Recommendation may waive the right to appellate review of the District Court's order. *U.S. v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The District Court need only review the Magistrate Judge's factual or legal conclusions that are specifically objected to by either party. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

> Local Rule 72.3(b) reads in pertinent part:
> The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge.

**B. Civil Rule 56(a) Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347. This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving

party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.   Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

## V. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff raises four objections to the Report and Recommended Decision of the Magistrate Judge discussed below.

### 1. Failure to Consider All Evidence in the Light Most Favorable to the Non-Moving Party in Recommending Summary Judgment on the Racial Harassment Claim

Plaintiff's first objection to the Magistrate Judge's Report and Recommended Decision is that the Magistrate Judge failed to consider all the evidence in the light most favorable to the non-moving party on the racial harassment claim.  Plaintiff asserts that the Magistrate Judge's Report did not evaluate the record as a whole and that the evidence that was considered was viewed in the light most favorable to Defendant, rather than Plaintiff.  Specifically, Plaintiff alleges that the Report ignored entirely three important aspects of Plaintiff's evidence:  (1) Defendant's inadequate and unpenetrating investigation of the gun incident; (2) Defendant's tepid punishment of Blanton; and (3) Defendant's misleading of the Plaintiff and the Ohio Civil

Rights Commission in regard to its investigation and punishment of Blanton.

An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor. *Faragher v. City of Boca Raton,* 524 U.S. 775, 807 (1998). When no tangible employment action is taken, as here, the employer may raise an affirmative defense comprised of two elements: (1) it exercised reasonable care to prevent and correct promptly any harassing behavior, and (2) that the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by employer or to avoid harm otherwise. *Id* at 807.

Here, Plaintiff may be able to establish employer liability, satisfying the fifth element of his *prima facie* case. However, for the reasons set forth in this opinion which follows, the Court has reached a conclusion that Plaintiff is unable to establish the third and fourth elements of his claim. Thus, Plaintiff cannot meet his evidentiary burden to preclude Summary Judgment.

### 2. The Report's Erroneous Analyzation of the Plaintiff's Racial Harassment Claim

The Magistrate Judge correctly states that in order for Plaintiff to establish race discrimination based upon a hostile work environment he must prove: (1) he was a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment had the effect of unreasonably interfering with plaintiff's work performance by creating an intimidating, hostile, or offensive work environment; and, (5) employer liability. *Williams v. General Motors Corp.*, 187 F.3d 553, 561 (6th Cir. 1999). Furthermore, Title VII is violated when the discrimination is so "severe or pervasive" as to "alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *see also Mitchell v. Toldeo Hosp.*,

964 F.2d 577, 582 (6th Cir. 1992).

First, Plaintiff contends that Blanton's comment regarding interracial marriage is probative evidence of racial bias and thus creates a genuine issue of material fact as to whether the harassment was based on race. Plaintiff relies on *Williams v. General Motors Corp.*, 187 F.3d 553 (6th Cir. 1999), which states "Non-sexual conduct may be illegally sex-based...where it evinces anti-female animus, and therefore could have been found to have contributed significantly to the hostile environment." *Id* at 565. The Court must consider the totality of the circumstances when considering the allegations. *See Id.* In *Williams*, although only two gender-specific comments were made, there were up to fifteen different instances where the plaintiff was treated differently from the male employees. *See Id* at 559. Compare to *Moorer v. Summit County Dept. of Job and Family Services*, No. 5:10CV457, 2011 WL 2746098 (N.D. Ohio July 14, 2011), where plaintiff could not establish conduct was based on gender discrimination by isolated comments because plaintiff could not show that the defendant treated men differently than women. *Id* at 5; *see also Oncale v. Sundowner Offshore Services*, 523 U.S. 75 (1998) ("We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations. The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.").

In the present case, Plaintiff has offered no evidence that he was treated any differently than Caucasian employees. Furthermore, he has offered no evidence that other African-American employees were treated any differently than Caucasian employees. He merely asserts

11

that because Blanton made one arguably racist comment, that this is evidence that all of Blanton's subsequent conduct toward the Plaintiff was racially biased. As a result, Plaintiff is unable to establish that Blanton's alleged harassment was based on race.

Next, Plaintiff argues that the gun incident, coupled with the other alleged conduct, is sufficiently extreme and severe to establish the fourth element of the *prima facie* case. Even "isolated incidents ([where] extremely serious) [can] amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). However, simple teasing, offhand comments, occasional offensive utterances, and other isolated incidents, unless extremely serious, do not rise to the level required to create a hostile work environment. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000). In a similar case, *Lockett v. Zatko*, No. 3:10 CV 1024, 2011 WL 5588730 (N.D. Ohio Nov. 16, 2011), defendant allegedly used a racial slur as well as made the comment "you'd complain if you got hung with a new rope." *Id* at 1. Defendant claimed that the comment was a joke in reference to plaintiff's constant complaining, not plaintiff's race, and the court held that based on the totality of the circumstances the conduct was not sufficiently severe or pervasive to establish a *prima facie* case. *Id* at 5; *see also Long v. Ford Motor Co.*, 193 F.App'x 497 (6th Cir. 2006) (finding repeated racial slurs, including the "n word," as well as threats of physical violence, although "utterly deplorable," were not severe or pervasive enough to establish a *prima facie* case).

Here, like in *Lockett*, the alleged incident was made in jest and was not meant to be based on race. Both Blanton and Allen made statements to Superintendent Mike Irvin about the incident that strongly suggest the comment was made in the context of a joke. Furthermore, both

12

Plaintiff and Jeff Allen testified that the comment referred to the Plaintiff's pain, and not to the fact that he is an African American.  The Report also correctly notes that the other alleged racially motivated acts regarding vacation scheduling, work assignment, telephone calls, and performance evaluations all involved ordinary workplace issues.  The Supreme Court has made clear that it is "important to distinguish between harassment and discriminatory harassment in order to ensure that Title VII does not become a general civility code...[regulating] the ordinary tribulations of the workplace." *Faragher*, 524 U.S. at 788.  Thus, as a result of the isolated nature of the conduct and insufficient evidence of racial motive, Blanton's conduct is not sufficiently severe or pervasive to establish a *prima facie* case.

### 3. The Report's Misapplication of the *McDonnell-Douglas* Order of Proof

The third objection raised by Plaintiff was that the Magistrate Judge's Report misapplied the *McDonnell-Douglas* order of proof to the Plaintiff's promotion claims.  A plaintiff with a discrimination claim based on failure to promote must demonstrate that:  (1) he is a member of a protected class*;* (2) he applied for and was qualified for a promotion; (3) he was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied.  *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005).  In order to satisfy the fourth prong of the *prima facie* requirement plaintiff must establish that he and the non-protected person who was ultimately hired for the desired position had similar qualifications.  *Id*.

Under the *McDonnell-Douglas* order of proof, if the plaintiff meets his *prima facie* burden, the employer must then produce a legitimate, non-discriminatory reason for not

13

promoting the plaintiff.  *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981) (*citing McDonnell Douglas Corp.*, 411 U.S. 792 (2003)); *Sutherland v. Mich. Dept. of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003).  If the defendant meets this burden, the plaintiff must then show that the defendant's articulated reason is pretext for discrimination.  *McDonnell Douglas Corp.*, 411 U.S. at 802-3.

 First, Plaintiff argues that Defendant did not have any set of minimum qualifications, but only "preferred qualities," and thus, Plaintiff cannot prove that he is "qualified" under the *McDonnell-Douglas prima facie* case formula.  To establish that he is qualified for the position, a Title VII plaintiff need only show that she satisfied the employer's "objective" qualifications.  *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009).  In *Mendoza v. Autozone, Inc.*, No. 3:08CV 2321, 2010 WL 1956549 (N.D. Ohio May 14, 2010), although there was no written standard, it was undisputed that defendant made promotions based on three factors: reliability, knowledge, and leadership.  *Id* at 5.  The court held that plaintiff could not establish that he was qualified because he offered no evidence that defendant did not follow the promotion criteria.  *Id* at 5; *see also Culver v. CCL Label, Inc.*, 455 F.App'x 625 (6th Cir. 2012) (holding plaintiff has burden to demonstrate objective qualifications for promotion); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575-76 (6th Cir. 2003) ("Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills.").

 In the context of the present case, Plaintiff has failed to offer any evidence of his objective qualifications.  He does not offer evidence of education, experience in the industry, or

14

demonstrated the possession of general skills. Instead, he merely asserts that because the Defendant did not set out a specific set of minimum qualifications that essentially there are no qualifications. Furthermore, Plaintiff states that "the Defendant cannot say that the Plaintiff was not qualified," however, the burden to prove qualification is on the Plaintiff and not the Defendant. Thus, since the Plaintiff offers no objective evidence that he was qualified for any of the positions in question, he cannot carry his burden of proof that he was qualified for the positions.

Next, Plaintiff asserts that the Report conflates the second and third prong of the *McDonnell-Douglas* order of proof. Prior Sixth Circuit case law warns against conflating the first (prima facie case) and second (articulation of a legitimate nondiscriminatory reason) steps in the *McDonnell-Douglas* analysis. *White*, 429 F.3d at 242. Case law indicates that the first and second steps in the analysis are conflated when the courts consider the defendant's proffered legitimate non-discriminatory reasons in determining whether the Plaintiff is qualified under the second element of the *prima facie* analysis. *See id*.

Here, the Report does not analyze whether the Plaintiff was qualified for the position at all. Instead, it merely asserts that the Plaintiff does not offer evidence that he had similar qualifications to the person ultimately hired, and thus he cannot satisfy the fourth element of the *prima facie* case. The Report then goes on to analyze the second step of the *McDonnell-Douglas* test as if Plaintiff's *prima facie* case had been established in order to illustrate that Defendant has also produced legitimate, non-discriminatory business reasons for denying Plaintiff the relevant positions. Furthermore, the Report does not find that Plaintiff was not qualified, but merely cites the Maye Declaration to show that Defendant did not think Plaintiff was qualified; thus showing

that Plaintiff did not have similar qualifications to the candidates who were ultimately hired.

Plaintiff also asserts that the evidence proffered by Defendant, as to the legitimate non-discriminatory business reasons for denying Plaintiff the relevant position, is unsupported by any documents. Plaintiff also asserts that "the HR Generalist who testified simply made up a reason on the spot during his deposition." However, "the employer's burden is satisfied if he simply 'explains what he has done' or 'produces evidence of legitimate nondiscriminatory reasons.'" *Burdine*, 450 U.S. at 253-258. Defendant need not persuade the Court that it was actually motivated by the proffered reasons, but it is sufficient to raise a genuine issue of fact as to whether it discriminated. *Burdine*, 450 U.S. at 254. Furthermore, the *Burdine* court held that the Appellate Court "erred in requiring the Defendant to prove by objective evidence that the person hired or promoted was more qualified than the Plaintiff." *Id* at 259-60.

In this case, Defendant offered evidence of the superior credentials of the people it actually hired and thus satisfies its evidentiary burden. Plaintiff claims that the HR Generalist, Lewis Maye, simply "made up" the proffered reasons in his deposition, however, as the Magistrate Judge discusses in detail, there is verifiable evidence that shows that Plaintiff was simply less qualified than the people actually hired to fill the positions. Furthermore, Maye testified that he had not even seen Plaintiff and did not know his race when he was looking for competitive candidates. On the other hand, Plaintiff has not offered any evidence other than his assertion that he was not hired on the basis of his race. As a result, even if Plaintiff met his burden of proving his *prima facie* case, Defendant has carried its burden of offering legitimate non-discriminatory reasons for not giving Plaintiff the promotions.

Lastly, Plaintiff claims that the reasons proffered by the Defendant are pretext for

discrimination and that the Defendant "did not provide admissible evidence of its legitimate nondiscriminatory reasons for selecting anyone." Plaintiff can establish pretext by showing that the defendant's proffered reason: (1) had no basis in fact; (2) did not actually motivate the challenged conduct; or (3) is insufficient to explain the challenged conduct. *Upshaw*, 576 F.3d at 586.

The testimony of Lewis Maye, taken in a deposition, is admissible evidence under Fed. R. Civ. P. 56(c). Furthermore, Maye's testimony satisfies Defendant's evidentiary burden. On the other hand, Plaintiff provides no evidence, other than a mere assertion that Lewis Maye is lying. He makes no effort to dispute the facts nor does he provide any evidence to show that the reasons proffered did not motivate the challenged conduct. Thus, Plaintiff has not carried his evidentiary burden that Defendant's proffered legitimate nondiscriminatory reasons were pretext for discrimination.

### 4. The Report's Failure to View the Evidence in the Light Most Favorable to the Plaintiff Regarding the Plaintiff's Retaliation Claim

Plaintiff's final objection is that the Magistrate Judge ignored evidence, and did not view the evidence that he did address in the light most favorable to Plaintiff in finding that there was no genuine issue of material fact regarding Plaintiff's retaliation claim. To maintain a claim for retaliation, Plaintiff must establish that: (1) he engaged in Title VII-protected activity; (2) Defendant knew that he engaged in the protected activity; (3) Defendant subsequently took an adverse employment action against him; and (4) the adverse action was causally related to the protected activity. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008) (*quoting Weigel v. Baptist Hosp. of E. Tenn.*, 302 F. 3d 367, 381 (6th Cir. 2002)).

Plaintiff contends that there is no dispute that the first three elements are met.  However, the Magistrate Judge's Report concludes that Plaintiff did not establish the third element, that the Defendant had taken an adverse employment action against Plaintiff.  Not every action that an employee dislikes is an "adverse employment action."  *See Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6TH Cir. 1996).  Rather, the employer's conduct must effect a "materially adverse change in the terms and conditions of employment." *Id.*; *White v. Burlington Northern & Santa Fe R. Co.*, 364 F.3d 789, 800 (6th Cir. 2004) (upholding definition of adverse employment action for purposes of Title VII retaliation cases).  "Trivial episodes of unpleasantness or admonition, or other *de minimis* employment actions, standing alone, cannot supply legally sufficient evidence of actionable material discipline or retaliation, even if they were arguably impelled by protected activity."  *Kelly v. Lambda Research, Inc.*, 89 Fed. App'x 535, 545 (6th Cir. 2004); *see also, e.g., Ford v. General Motors Corp.*, 305 F.3d 545, 553 (6th Cir. 2002) (holding that an "adverse employment action" in the Title VII context requires an alteration in a significant term or condition of employment, such as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.") (quoting *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999)); *see also Kocsis*, 97 F.3d 876.

In this case, the Magistrate Judge correctly notes that Plaintiff has produced no evidence that he has suffered any of the above adverse employment actions.  Instead, Plaintiff asserts that he was harassed by Supervisor Mike Wilson and that he was known as "the most hated man on the Dearborn Division."  However, an atmosphere of general dislike is not even close to the

adverse action required to constitute retaliation. *See Trepka v. Board of Educ.*, 28 F.App'x 455 (6th Cir. 2002) (finding several tense verbal interactions and comments made about Plaintiff's disability did not rise to level of adverse employment action). Plaintiff alleges further that the enactment of "Derick Campbell Rule," increasing the mileage requirement for Road Foremen from 50 to 75 miles, was also retaliatory. However, as the Magistrate Judge asserts, Plaintiff has offered no evidence that the implementation of the rule was retaliatory. Instead, he merely claims that the new rule was not needed and that this creates a genuine issue of material fact. But the fact that the rule was a neutral one that applied to all Road Foreman in the Dearborn division, suggests otherwise.

Lastly, the Plaintiff argues that a jury should determine whether or not there is a causal relationship between the protected activity and the "adverse employment actions." However, assuming that Plaintiff has suffered an adverse employment action, Plaintiff has offered no evidence of a causal connection between the adverse action and the protected activity, other than that "temporally there is a suggestion of a connection." To establish the element of causation in a Title VII claim, a plaintiff is required to proffer evidence sufficient to raise the inference that his protected activity was the likely reason for the adverse action. *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997). "Evidence that defendant treated the plaintiff differently than similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Nguyen v. City of Cleveland*, 229 F.3d 559 (6th Cir. 2000). In *Jones v. St. Jude Med. S.C., Inc.*, 823 F.Supp. 2d 699 (S.D. Ohio 2011), plaintiff did not establish a causal connection when she failed to show that she was treated less favorably than similar situated employees who did not engage in the protected conduct, and at

19

least five months elapsed between representative's last instance of protected conduct and the adverse employment action.  *See Id; see also Spengler v. Worthington Cyclinders*, 615 F.3d 481 (6th Cir. 2010) (holding temporal proximity, standing alone, not enough to establish causal connection for retaliation claim).

Here, as in *Jones*, Plaintiff offers no evidence that he was treated differently than similarly situated employees who did not engage in the protected conduct.  Plaintiff points to the implementation of the "Derick Campbell Rule" as evidence of this, but as discussed above, the rule applied to all Road Foremen in the Dearborn division.  Furthermore, the email sent to the Plaintiff outlining the new rule was sent approximately nine months after Plaintiff first complained to Irvin about the Blanton incident.  Thus, for the reasons set forth above, Plaintiff is unable to establish his *prima facie* case for a retaliation claim under Title VII and the Magistrate Judge's grant of summary judgment was proper.

## VI. CONCLUSION

For the foregoing reasons, the Court ACCEPTS the Magistrate Judge's Report and Recommendation, and grants Defendant's Motion for Summary Judgment dismissing all of Plaintiff's claims.

**IT IS SO ORDERED**

                                                      s/ Christopher A. Boyko
                                                     **CHRISTOPHER A. BOYKO**
                                                     **UNITED STATES DISTRICT JUDGE**

DATED:  June 22, 2012